# **EXHIBIT 4**

# *AMENDED* BID PROCEDURES[1]

Gems TV (USA) Limited (the "Debtor") has filed a chapter 11 case pending in the United States Bankruptcy Court in the District of Delaware (the "Bankruptcy Court"), administered under Case No. 10-11158 (PJW). ~~By motion dated April 28, 2010 (the "Motion"), the Debtor seeks, among other things, approval of the process and procedures set forth below (the~~ "These amended bid procedures (the "Amended Bid Procedures") ~~to effectuate the sale of the Acquired Assets¹ (the "Transaction"). The Bid Procedures~~ are designed to facilitate a full and fair bidding process to maximize the value of the Debtor's non-inventory assets, as set forth in greater detail on the schedule attached hereto as Exhibit 1 (the "Acquired Assets") for the benefit of the Debtor's creditors and the bankruptcy estate. By Order dated ~~May 5,~~ June 18, 2010, the Bankruptcy Court entered an Order approving these ~~Bid Procedures.~~ Amended Bid Procedures. For the avoidance of doubt, the Acquired Assets shall not include any of those assets set forth on the schedule attached hereto as Exhibit 2.

On or before ~~June 3,~~ July 27, 2010, as further described below, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") at which time the Debtor shall seek entry of an order (the "Sale Order") authorizing and approving the sale (the "Sale") of the Acquired Assets ~~(the "Sale") to Zalemark Holding Company, Inc. (the "Stalking Horse Bidder") or~~ to the Successful Bidder (defined below).

### ~~Asset Purchase Agreement~~

~~On April 28, 2010, the Debtor entered into an asset purchase agreement (and with any and all amendments thereto, the "APA") with the Stalking Horse Bidder, pursuant to which the Stalking Horse Bidder proposed to acquire the Acquired Assets. Pursuant to the APA, the Stalking Horse Bidder will provide consideration for the Acquired Assets in an amount equal to the Purchase Price.² The Transaction contemplated by the APA is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").~~

### Bidding Process

**A.    Participation Requirements**

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a "Potential Bidder") must first deliver (unless previously delivered) to: (i) counsel to the Debtor, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801, Attn: Robert S. Brady, Esq.~~;~~ and (ii) counsel to the Official Committee of Unsecured Creditors (the "Committee"), Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, NY 10017, Attn: Ian R. Winters, Esq., and Fox Rothschild LLP, Citizens Bank Center, 919 North

---

[1] On April 28, 2010, the Debtor entered into that certain Asset Purchase Agreement By and Between Gems TV (USA) Limited and Zalemark Holding Company, Inc. (as amended, the "Zalemark APA"), pursuant to which Zalemark Holding Company ("Zalemark") agreed to purchase the Acquired Assets. On May 5, 2010, the Court entered an Order [Docket No. 110] approving certain bid procedures in accordance with the Zalemark APA. On June 18, 2010, the Debtor declared Zalemark to be in breach of the Zalemark APA and obtained approval of these amended Bid Procedures.

[~~1~~] ~~"Acquired Assets" shall mean substantially all of the Debtor's non-inventory assets, as more fully set forth in the Agreement.~~

[~~2~~] ~~"Purchase Price" means $3,724,750 as set forth in Section 2.1 of the APA.~~

Market Street, Suite 1300, Wilmington, DE 19899, Attn: Jeffrey M. Schlerf, Esq.; and (iii) counsel to the Stalking Horse Bidder, Todd Becker Law, 3750 E. Anaheim Street, Suite 100, Long Beach, CA 90804 (Attn: Todd B. Becker), facsimile (562) 494-8904, and Campbell & Levine, 800 North King Street Wilmington, DE 19801, Fax (302) 426-9947, (collectively, the "Notice Parties"), the following items:

    i.  An executed confidentiality agreement, as set forth in the APA, in form and substance reasonably acceptable to the Debtor, in consultation with the Committee.

    ii.  At the time of submission of the competing bidBid (defined below), written evidence of the financial capability of consummating the purchase of the Acquired Assets, and, if applicable, the assumption of the Assumed Liabilitiesany liabilities.

    iii.  The most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of the Sale, Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure evidencing the Potential Bidder's ability to close the Transaction, the sufficiency of which shall be determined by the Debtor, in consultation with the Committee, in its reasonable discretion.

    iv.  Written acknowledgement and agreement that the sale of the Debtor's customer lists, customer data and other consumer privacy information shall be maintained in accordance with the Debtor's existing privacy policy and, if the Court ultimately determines appointment is appropriate, subject to and conform toin conformance with the recommendations of the consumer privacy ombudsperson to be appointed pursuant to 11 U.S.C. § 332 (the "Consumer Privacy Ombudsperson") (to the extent that appointment of a Consumer Privacy Ombudsman is necessary) in connection with the transactions contemplated herein.

**B. Bid Deadline**

  The deadline for submitting bids by a Qualified Bidder shall be May 28,July 20, 2010, at 12:00 NOON (ET) (the "Bid Deadline"). A Bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

  Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer for all or certain of the Acquired Assets (a bid for all of the Acquired Assets shall be deemed a "Bulk Bid" and a bid for one or more but less than all Acquired Asset Lots (defined below) shall be deemed a "Lot Bid" and collectively a "Bid") shall deliver written copies of its Bid to: (i) the Debtor's counsel, Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq.), facsimile (302) 571-1253; (ii) the Stalking Horse Bidder's counsel, Todd Becker Law, 3750 E. Anaheim Street, Suite 100, Long Beach, CA 90804 (Attn: Todd B. Becker), facsimile (562) 494-8904, and Campbell & Levine, 800 North King Street Wilmington, DE 19801, Fax (302) 426-9947, and (iii) the Committee's counsel, Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, NY 10017 (Attn: Ian R. Winters, Esq.), facsimile (212) 972-2245 and Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 1300, Wilmington, DE 19899 (Attn: Jeffrey M. Schlerf, Esq.), facsimile (302) 656-8920 (collectively, the "Notice Parties"), the Notice Parties by the Bid Deadline.

2

YCST01:9608470.59797768.4                   069355.1001

C.  **Determination of Qualified Bid Status**

To be eligible to participate in the Bidding Process each Qualified Bidder must deliver to the ~~Debtor~~Notice Parties a written offer so as to be received by the Bid Deadline and that complies with each of the following conditions:

i. ~~Modified APA. Each Bid shall include a black-lined copy of the APA (the "Modified APA") to show all changes requested by the Bidder, including those related to the Purchase Price; provided, however, that the terms of the Modified APA are substantially the same or better than the terms of the APA.~~

i. ~~ii.~~ Acquired Asset Lots. The Assets have been divided into the following lots (each, an "Acquired Asset Lot"): (1) substantially all of the ~~Debtors'~~Debtor's furniture, fixtures, and equipment; (2) substantially all of the ~~Debtors'~~Debtor's production equipment; (3) the Debtor's Reno, Nevada real property lease; (4) the Debtor's customer list on a non-exclusive basis; and (5) certain of the Debtor's intellectual property. Each bidder must bid on all the Acquired Assets within each Acquired Asset Lot. Qualified Bidders may bid on all or any number or combination of the Acquired Asset Lots; provided however, that a Qualified Bidder may only bid at Auction on lots for which they have previously submitted a Qualified Bid.

ii. ~~iii.~~ Contingencies. A Bid may not be conditioned on obtaining internal approval or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions~~, none of which shall be more burdensome than those set forth in the APA~~.

iii. ~~iv.~~ Authorization to Bid. A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery of the Qualified Bid, and closing of the ~~Modified APA~~Sale.

iv. ~~v.~~ Deposit. ~~Any person submitting a~~Each Bid shall ~~provide a deposit to Debtor's counsel of at least $200,000, contemporaneous with the submission of its Qualified Bid~~be accompanied with an earnest money deposit in an amount equal to ten percent (10%) of the bid amount (each a "Deposit").

v. ~~vi.~~ Minimum Initial Bid Requirement. If a Qualified Bidder is submitting a Bulk Bid, such Qualified Bidder's Bid shall have an initial minimum bid requirement that is ~~One~~Five Hundred ~~Seventy~~ Thousand Dollars ($~~170,000) greater than the net cash portion of the Purchase Price, Two Million Seven Hundred Seven Thousand Dollars ($2,707,000) (the "Minimum Initial Bulk Bid"~~500,000). If a Qualified Bidder is submitting a Lot Bid for an individual Acquired Asset Lot, or fewer than all of the Acquired Assets, there shall be no minimum bid amount.

vi. ~~vii.~~ Other Evidence. Each Bid must contain evidence satisfactory to the Debtor that the bidder is reasonably likely (based on availability of financing, experience and other considerations) to be able to timely consummate a purchase of the Acquired Assets if selected as the Successful Bidder (as defined below).

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtor's reasonable discretion, in consultation with the Committee

3

and taking into account the terms and conditions of any assumed debt obligations, and that satisfies the Bid Deadline requirement above, shall constitute a qualified bid ("Qualified Bid"). In the event that a Bid is determined not to be a Qualified Bid in accordance with the conditions set forth above, the Qualified Bidder shall be refunded its Deposit within three (3) business days after that determination.

~~The Stalking Horse Bidder is a Qualified Bidder and the APA is a Qualified Bid.~~

**~~D. Stalking Horse Protections~~**

~~The Debtor has agreed that the Debtor must, in the circumstances enumerated in the APA, pay to the Stalking Horse Bidder the Break-Up Fee and the Expense Reimbursement (each as defined in the APA). The payment of the Expense Reimbursement and the Break-Up Fee shall be governed by the provisions of the APA and the Bid Procedures Order.~~

## Auction

In the event that the Debtor receives ~~at least~~ more than one (1) Qualified Bid ~~(other than the Stalking Horse Bidder)~~ by the Bid Deadline, the Debtor shall conduct an auction (the "Auction") of the Acquired Assets to determine the highest and otherwise best bid with respect to the Acquired Assets on ~~June 2,~~ July 26, 2010 at 12:00 NOON (~~EST~~ET) at the offices of Young Conaway Stargatt & Taylor, LLP. ~~The aggregate amount of the Acquired Asset Lot Bids will need to exceed the amount of the highest Bulk Bid in order to be deemed a higher and better bid at auction.~~ Except as otherwise set forth herein, the Debtor, after consultation with the Committee, may conduct the Auction in the manner it determines will result in the highest, best or otherwise financially superior offer(s) for the Acquired Assets. Without limiting the foregoing, the Debtor may aggregate any number of bidders and allow such bidders to bid as a group. The Debtor may, but is not obligated to, from time to time, and in an open forum, advise the Qualified Bidders at the Auction of their determination as to the terms of the then highest or best Qualified Bid.

If, however, no ~~such~~ more than one Qualified Bid ~~other than that of the Stalking Horse Bidder~~ is received by the Bid Deadline, the Debtor will report the same to the Bankruptcy Court, will declare ~~the Stalking Horse~~ such Qualified Bidder the Successful Bidder and will proceed (in its discretion upon consultation with the ~~Transaction pursuant to~~ Committee) with the ~~terms~~ sale of the ~~APA~~ Acquired Assets, upon entry of an order approving the sale of the Acquired Assets to ~~the Stalking Horse~~ such Qualified Bidder.

### THE AUCTION SHALL BE CONDUCTED
### ACCORDING TO THE FOLLOWING PROCEDURES:

**A. Participation in the Auction**

Only ~~the Stalking Horse Bidder and other~~ Qualified Bidders may submit Bids at the Auction.

The Debtor and its professional advisors, in consultation with the Committee, shall direct and preside over the Auction. Bidding at the Auction shall begin with ~~the Baseline Bid, which, in the event such Baseline Bid is not that of the Stalking Horse Bidder, shall be in an amount at least equal to the Minimum Initial Bulk Bid. All Bulk~~ (i) the greater of the highest Bulk Bid and the aggregate of the highest Qualified Bid received for each Acquired Asset Lot, or (ii) in the event no Bulk Bid is received, the highest Qualified Bid received for each Acquired

4

Asset Lot (each, a "Baseline Bid"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders ~~and the Stalking Horse Bidder~~. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid (as defined below).

**B.** ~~A.~~ **Terms of Overbids**

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid. Any Qualified Bidder's initial Overbid shall be at least $~~25,000~~20,000 in excess of the Baseline Bid and each subsequent Overbid must be made in increments of at least $~~25,000~~20,000 over the previous highest or best Bid.

Each Overbid must comply with the conditions for a Qualified Bid set forth above other than the Minimum Initial Bid requirement. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor accepts a higher Qualified Bid as an Overbid. The Debtor shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

**C.** ~~A.~~ **Closing the Auction**

Upon conclusion of the bidding, the Auction shall be closed, and the Debtor, in consultation with the Committee, shall determine, in the Debtor's reasonable discretion, in consultation with the Committee and taking into account the terms and conditions of any assumed debt obligations the highest or otherwise best offer for the Acquired Assets (the "Successful Bid") and the entity submitting such Successful Bid, the "Successful Bidder") and the next highest or otherwise best offer after the Successful Bid (the "Back-Up Bid", and the entity submitting such Back-Up Bid, the "Back-Up Bidder"). The Back-Up Bid shall remain open and irrevocable for ten (10) days following the conclusion of the Auction.

**D.** ~~A.~~ **Failure to Close**

In the event the Successful Bidder fails to consummate the Sale as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtor shall: (i) retain the Successful Bidder's Deposit as liquidated damages; and (ii) be authorized, but not required, to consummate the Back-Up Bid with the Back-Up Bidder without further notice or order of the Bankruptcy Court, in which case the Back-Up Bidder shall be deemed to be the Successful Bidder and shall consummate its Back-Up Bid.

**E.** ~~A.~~ **Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

### Acceptance of Successful Bid

The Debtor shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not

5

constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### ~~Stalking Horse Protections~~

~~To the extent the Stalking Horse Bidder is not the Successful Bidder the Debtor shall be required to pay the Stalking Horse Bidder a Break-Up Fee equal to $95,000 (three percent (3.5%) of the net cash portion of the Purchase Price), plus the amount of Expense Reimbursement to cover Buyer's due diligence and related attorney's fees and costs incurred in pursuing this sale of Acquired Assets, provided, however, that the Debtor's liability for such Expense Reimbursement shall not exceed Fifty Thousand Dollars ($50,000).~~

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on or before ~~, 2010.~~ July 27, 2010 at 9:30 a.m. (ET).

### Return of Deposit

The Deposit of the Successful Bidder shall be applied to the Purchase Price of such transaction at Closing. The Deposits of all other Qualified Bidders shall be held in an interest-bearing ~~escrow~~ segregated account ~~until the Termination Date, and thereafter,~~ and except with respect to the Back-up Bidder, shall be returned to the respective bidders~~.~~ after the conclusion of the Auction. The Deposit of the Back-up Bidder shall be returned no later than ten (10) days following the conclusion of the Auction.

If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain the ~~Good Faith~~ Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder and the Debtor may consummate a Sale to the Back-up Bidder without further order of the Court.

### Modifications

The Amended Bid Procedures may not be modified except with the express written consent of the Debtor, upon consultation with the Committee, ~~and the Stalking Horse Bidder~~ or by order of the Bankruptcy Court. The Debtor expressly reserves the right, upon consultation with the Committee, as it may reasonably determine to be in the best interests of its estate to enter into one or more stalking horse agreements and seek Court approval of expense reimbursements and/or break-up fees with respect to the Acquired Assets.

The Debtor, in its reasonable discretion, may, in consultation with the Committee (a) determine, which Qualified Bid, if any, is the highest or otherwise best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Amended Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtor, its estate and creditors~~, provided, however, that the Stalking Horse Bidder is a Qualified Bidder and the APA is a Qualified Bid~~.

# EXHIBIT 1
# ACQUIRED ASSETS

1. All non-proprietary software.

2. All trademarks belonging to the Debtor, other than the mark "GemsTV".

3. Existing customer list - on a non-exclusive basis.

4. All of Debtor's right to any security deposit for the premises located at 1190 Trademark Drive, Reno, Nevada 89521-6001, in the amount of $379,500.

5. The Debtor's real property lease agreement for the premises located at 1190 Trademark Drive, Reno, Nevada 89521-6001.

6. All of the Debtor's executory contracts.

7. The schedule of assets, substantially in the form attached hereto.

# EXHIBIT 2
# EXCLUDED ASSETS

1. All causes of action including, but not limited to, causes of action under Chapter 5 of the Bankruptcy Code.

2. All rights to or interest in the mark/trade name Gems TV.

3. All rights in and to the Debtor's domain name gemstv.com.

4. All books and records of the Debtor other than non-exclusive rights to the Debtor's customer list.

5. The servers (Serial Nos. CTI gtv00028 and CRM gtv00030) containing the proprietary reverse auction software and producer applications used by the Debtor in the operation of its business, including without limitation the CT Asia licenses.

6. All proprietary software.

7. The Debtor's cash, accounts, inventory and deposits (other than the Reno, NV real property security deposit).

8. Debtor's rights in and to any tax refund or insurance claims.

9. Prepaid expenses.

10. Amounts due from related parties.

11. Vehicles.

12. Customer list (other than non-exclusive rights assigned to buyer).

13. All rights in the Debtor's URL www.gemstv.com and any related urls.

Document comparison by Workshare Professional on Thursday, June 17, 2010 2:01:47 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WORKSITE01/YCST01/9608470/5 |
| Description | #9608470v5<YCST01> - Gems - Bid Procedures Non-Inventory |
| Document 2 ID | interwovenSite://WORKSITE01/YCST01/9797768/4 |
| Description | #9797768v4<YCST01> - Gems - Bid Procedures Non-Inventory - No Stalking Horse |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 111 |
| Deletions | 71 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 182 |